UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DE'RAOUL FILES,**<br>    Plaintiff,<br><br>v.<br><br>**MARK PETTWAY, et al.,**<br>    Defendants. | **Case No. 7:21-cv-911-CLM** |

## MEMORANDUM OPINION

Plaintiff De'Raoul Files is a double above-knee amputee. Files sues Defendants Mark Pettway, David Wayne Thompson, Felicia Franklin, George McCreless, Terry Scott, Robert Hill, Dana Merchant, and Advanced Correctional Healthcare, Inc. ("ACH") for not providing him with adequate medical care and housing him in an inaccessible cell at the Jefferson County Jail. (Doc. 47). Defendants move to dismiss each of Files' claims against them. (Docs. 48, 57, 59).

In his response brief, Files concedes that he cannot state a claim against Sheriff Pettway. (*See* Doc. 66 at 3 n.1). So the court **WILL GRANT** Pettway's motion to dismiss (doc. 48). As for Files' claims against the other Defendants, the court **WILL GRANT** the motions to dismiss each claim other than Files' claims against Thompson, McCreless, Scott, Hill, and Merchant for violating Title II of the Americans with Disabilities Act. The court **WILL DENY** these Defendants' motion to dismiss the individual and official capacity Title II claims against them. As a result, the court will enter a separate order that **GRANTS** ACH's motion to dismiss (doc. 57) and **GRANTS IN PART** and **DENIES IN PART** Thompson, Franklin, McCreless, Scott, Hill, and Merchant's motion (doc. 59). The court will also require the remaining parties to file a Rule 26(f) report on or before **January 19, 2024,** that has this case trial ready by **March 17, 2025**.

## BACKGROUND

### A. Statement of Alleged Facts

Around March 2019, Files turned himself into the Jefferson County Jail to serve a 60-month sentence. (Doc. 47 ¶¶ 13–14). Files was a double, above-knee amputee who required a handicapped-accessible cell. (*Id.* ¶ 16). On top of that, Files fractured a rib and punctured a lung in an incident that happened before his surrender date. (*Id.* ¶ 15).

Felicia Franklin, the Jefferson County Jail Booking Officer, assigned Files a single-person cell on the medical floor, where two other inmates were housed. (*Id.* ¶ 18). One inmate occupied the bed, and the other inmate slept on the floor. (*Id.*). The cell was too small to accommodate Files' wheelchair and lacked fixtures, such as handrails, which were necessary for Files to move around the cell. (*Id.* ¶ 19).

Files' wheelchair didn't fit into the cell; he couldn't maneuver around the cell; and, he had no adequate place to sleep. (*Id.* ¶ 21). This caused Files to leave his wheelchair outside the cell, crawl across the floor of the cell, and sleep on a mat around one foot away from the cell's toilet. (*Id.* ¶ 22). Being so close to the toilet, Files could only turn his head when his cellmates used the toilet. (*Id.* ¶ 23). Files also couldn't use his cell's toilet because it lacked handrails. (*Id.* ¶ 24). So Files could only use the day space bathroom when he was allowed outside his cell. (*Id.*).

Files filed several grievances with David Thompson, the Chief Jail Administrator, challenging his cell assignment and sleeping arrangement. (*Id.* ¶ 25). But Thompson ignored each of these grievances. (*Id.*). Files also requested a suitable cell and other accommodations for his disabilities from Sergeants McCreless, Scott, Hill, and Merchant. (*Id.* ¶¶ 26–27). But they ignored each request. (*Id.*). Finally, Files requested medical attention for his pre-confinement injuries, which he says were exacerbated by laying on the cold, hard floor of his cell. (*Id.* ¶ 28). According to Files, during the 3 months he was housed at the Jefferson County Jail, no one ever accommodated his disability, changed his cell assignment, provided him with a proper place to sleep, responded to his grievances, or provided him with necessary medical treatment. (*Id.* ¶¶ 29–30).

### B.     Procedural History

Files originally filed this lawsuit pro se on June 25, 2021. (Doc. 1). In his complaint, Files named Sheriff Mark Pettway and the Jefferson County Sheriff's Department as Defendants and asserted deliberate indifference alleging many of the facts discussed above. (*Id.*). Because Files was a pro se prisoner bringing a § 1983 claim, the case was dual assigned to both a United States District Judge and a United States Magistrate Judge under 28 U.S.C. § 636(b)(1) and the usual practices of this court. After screening Files' original complaint, the magistrate judge ordered Files to amend it because (a) Sheriff's Departments are not legal entities that can be sued, and (b) Sheriff Pettway could not be held vicariously liable for the acts of his employees. (Doc. 6). Files didn't amend his complaint within the time allotted, so the court dismissed the case for failure to prosecute. (Doc. 9).

Three months later, Files moved for reconsideration of the dismissal order, (doc. 11), and the court reopened the case (doc. 12). Files then filed an amended complaint in May 2022 against several John Does, including John Doe Jail Administrator, John/Jane Doe Booking, John/Jane Doe Shift Supervisor, and Jane Doe RN, LPN, Doctor Medical (Doc. 14). The magistrate judge ordered Files to amend his complaint again, noting that he hadn't adequately alleged deliberate indifference and that it was now unclear whether Files was bringing his claims under § 1983 or the ADA. (Doc. 15). Files then retained counsel who filed a second amended complaint in November 2022. (Doc. 23). The second amended complaint again named Pettway, John Doe Chief Jail Administrator, John Doe Booking Officer, John Doe Day Shift Supervisor, John Doe Night Shift Supervisor, and John Doe Medical Staff as Defendants. (*Id.*). Because Files was now represented, the court directed the Clerk of Court to remove the magistrate judge from the case. (Doc. 22).

The court also granted Files' motion to seek discovery from Sheriff Pettway to determine the identities of the John Doe Defendants. (Doc. 27). After Files learned their identities, he filed a third amended complaint (doc. 47), the operative complaint that Defendants seek to dismiss.

## STANDARD OF REVIEW

In reviewing a Rule 12 motion, this court accepts the allegations in Files' complaint as true and construes them in the light most favorable to Files. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether Files' allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Files to relief, then the court must deny Defendants' motions to dismiss. If, however, the court accepts all of Files' pleaded facts as true, and Files still would not be entitled to relief, then the court must grant the motions.

## DISCUSSION

Files' third amended complaint includes five counts. Count I brings a claim under Title II of the ADA against each Defendant in their individual and official capacities. Count II brings a § 1983 claim of deliberate indifference to serious medical needs against Defendants Thompson, Franklin, McCreless, Scott, Hill, Merchant, and ACH in their individual capacities. Count III brings a § 1983 claim of failure to intervene against Defendants Pettway, Thompson, McCreless, Scott, Hill, and Merchant in their individual capacities. Count IV brings a § 1983 supervisory liability claim against Defendants Pettway, Thompson, McCreless, Scott, Hill, and Merchant in their individual capacities. Finally, Count V brings an intentional infliction of emotional distress claim against each Defendant.

In his response to Defendants' motions to dismiss, Files concedes that he cannot state a claim against Sheriff Pettway or a supervisory liability claim against any Defendant. (Doc. 66 at 3 n.1, 21). Files also concedes that his request for injunctive relief is moot because he is no longer incarcerated at the Jefferson County Jail. (*Id.* at 12). Finally, Files now seeks to bring his intentional infliction of emotional distress claim against only Defendant Franklin. (*Id.* at 26–28). The court will dismiss these claims as conceded and address the substance of Files' remaining claims below.

4

### A. Statute of Limitations/Continuing Violations Doctrine

Defendants first argue that the court should dismiss Files' complaint because his claims are time-barred. In Alabama, the general personal injury statute of limitations is two years. *See* Ala. Code § 6-2-38(l). This statute of limitations also applies to Files' claims under § 1983 and Title II. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989) ("We accordingly hold that where state law provides multiple statute of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014) (Two-year statute of limitations applies to Title II discrimination claims brought in Alabama).

Files was first incarcerated at the Jefferson County Jail sometime in March 2019 (*see* doc. 47 ¶ 13) but didn't file his original complaint until June 25, 2021 (*see* doc. 1 at 4–5).[1] Because Files didn't file his original complaint on or before March 31, 2021, Defendants argue that his claims are time-barred. Files responds that the continuing violations doctrine applies to his claims, meaning that he had until July 1, 2021, to file his original complaint. According to Files, the statute of limitations for his claims began to accrue on July 1, 2019, because the court can reasonably infer from his allegations that that was the last day he was incarcerated at the Jefferson County Jail.

The continuing violations doctrine allows "a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007). "When the violation alleged involves continuing injury, the cause of action accrues and the limitations period begins to run, at the time the unlawful conduct ceases." *Id.* "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations

---

[1] The Clerk's Office didn't docket Files' complaint until July 6, 2021. But "[u]nder the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). Absent evidence to the contrary, this court must assume that a prisoner's complaint was delivered to prison authorities on the day he signed it. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Files dated his original complaint June 25, 2021, so the court deems it filed on that date.

period or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (cleaned up).

1. <u>Claims against Franklin</u>: Files' claims against Franklin accrued before July 1, 2019. Files' factual allegations against Franklin are: (1) that Franklin was responsible for booking inmates and assigning them cells; (2) that Franklin assigned Files a single-person cell on the medical floor that already housed two other inmates; and (3) that Franklin knew the cell couldn't accommodate Files' disability. (Doc. 47 ¶¶ 4, 18–20). Files' substantive counts also only discuss Franklin's role as initially assigning Files his cell. (*Id.* ¶¶ 39, 44, 55).

At the latest, Franklin gave Files his cell assignment on March 31, 2019. And none of Files' well-pleaded facts suggest that Franklin had the authority to respond to Files' grievances about his cell assignment or to change his cell assignment after she made it. So while Files may have suffered the consequences of Franklin's alleged violations until July 1, 2019, Franklin's actions were a one-time violation that occurred in March 2019. The court thus finds that Files' claims against Franklin are time-barred because the statute of limitations ran before Files filed his original complaint on June 25, 2021.

2. <u>Claims against other Defendants</u>: But it's plausible that the continuing violations doctrine prevented Files' claims against the remaining Defendants from accruing until July 1, 2019. Unlike Franklin, the remaining Defendants had authority to respond to Files' requests. Yet Files claims that these Defendants ***never responded*** to his grievances or requests for a suitable cell, ADA accommodations, or medical attention. Even if Files made these requests early in his detention at Jefferson County, the failure to respond to Files' request is the violation that these Defendants allegedly committed. According to Files' complaint, that violation continued throughout his incarceration at the Jefferson County Jail because Defendants never acknowledged his requests for a suitable cell, ADA accommodations, or medical attention. And because it's plausible that Files was incarcerated at the Jefferson County Jail until July 1, 2019, Files has alleged enough facts for the court to reasonably infer that he had until July 1, 2021, to sue these Defendants.

### B. Relation Back

While he filed his complaint in June 2021, Files didn't name Thompson, McCreless, Scott, Hill, Merchant, or ACH as Defendants until March 30, 2023. So Files' claims against these Defendants are timely only if they relate back to his June 25, 2021 complaint. Federal Rule of Civil Procedure 15(c)(1) sets the standard for relating back when the amended complaint changes the party or the name of the party:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back; [or]
> >
> > . . .
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving a summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Alabama law is the law that supplies the statute of limitations for each of Files' claims. So Files' claims are timely if they satisfy either Alabama Rule of Civil Procedure 15 or Federal Rule of Civil Procedure 15(c)(1)(C). The only meaningful difference between Alabama Rule of Civil Procedure 15(c) and Federal Rule of Civil Procedure 15(c) is that Alabama includes a subsection that addresses its allowance of fictitious party pleading. And "federal decisions construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure because the Alabama Rules

were patterned after the Federal Rules." *Ex parte Novus Utils., Inc.*, 85 So. 3d 988, 996 (Ala. 2011).

Files didn't sue a fictitious party in his original complaint. So for his claims to be timely, Files must satisfy the nearly identical standards of Federal Rule of Civil Procedure 15(c)(1)(C) and Alabama Rule of Civil Procedure 15(c)(3). Applied here, these rules have three requirements: (1) Files must satisfy Rule 15(c)(1)(B); (2) Defendants will not suffer prejudice from defending on the merits; and (3) within 120 days (90 days under federal law), Defendants should have known that they were the proper Defendants.

1. <u>Jefferson County Defendants</u>: Rule 15(c)(1)(B) requires the claims in the amended complaint to arise out of the same conduct, transaction, or occurrence that supported the claim(s) in the original complaint. Fed. R. Civ. P. 15(c)(1)(B). Files meets this requirement when it comes to Thompson, McCreless, Scott, Hill, and Merchant (*i.e.*, the Jefferson County Defendants). The allegations about the conditions of Files' cell and the failure to respond to his grievances are the same in both the original and third amended complaint. The only difference is that Files named Sheriff Pettway and the Jefferson County Sheriff's Department as Defendants in his original complaint and names Thompson, McCreless, Scott, Hill, and Merchant as Defendants in his third amended complaint.

As for knowledge and prejudice, "[t]he only question under Rule 15(c)(1)(C)(ii), then is whether party A knew or should have known that absent some mistake, the action would have been brought against him." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). And "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotations omitted), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Discovery may reveal that the Jefferson County Defendants didn't know within 120 days of Files filing his original complaint that they were the proper Defendants to Files' claims about the condition of his cell. But it isn't apparent from the face of Files' complaint that they lacked the requisite notice. In fact, nothing in the record shows what Thompson, McCreless, Scott, Hill, and

8

Merchant knew about Files' complaint within 120 days of him filing it. Plus, the magistrate judge recognized that Files had sued the wrong Defendants in his original pro se complaint. That's why she ordered Files to amend his complaint to name "only those persons who violated his constitutional rights." (Doc. 6 at 2). And Files' third amended complaint alleges that Thompson, McCreless, Scott, Hill, and Merchant were the individuals responsible for responding to the grievances related to Files' cell assignment/lack of accommodations. So perhaps they knew or should have known that Files should have sued them instead of the Jefferson County Sheriff's Department. As a result, the court will not dismiss the claims against Thompson, McCreless, Scott, Hill, and Merchant as time-barred at the motion-to-dismiss stage.

The court also rejects the Jefferson County Defendants' argument that Files has waived the argument that the relation back doctrine applies to the claims against the Jefferson County Defendants because his response brief addresses only whether the claims against ACH relate back to the original complaint. A statute of limitations bar is an affirmative defense, so it's the Jefferson County Defendants' burden to show that the relation back doctrine doesn't apply. Because they haven't met their burden, the court will not dismiss Files' claims against them as untimely.

2. <u>ACH</u>: The court reaches the opposite conclusion when it comes to ACH. Files' third amended complaint seeks to hold ACH liable for failing to respond to his request for medical attention for his pre-confinement injuries, which he says were exacerbated by having to lay on his cell floor. (*See* Doc. 47 ¶¶ 28, 30, 42, 46, 56). But Files' original complaint only mentioned his pre-confinement injuries to explain that it was harder for him to get around than usual when he was booked into the Jefferson County Jail. (Doc. 1 at ¶ 13). While Files also said that he "was injured badly and hurting," he connected this allegation to having to transfer to and from the toilet with no handicap rails or wheelchair assistance. (*Id.* ¶ 17). Files never alleged that he was denied a request for medical care.

"Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002). And though the alleged failure to treat Files' pre-confinement injuries occurred at the same time as the

alleged failure to provide Files with his requested accommodations, Files' original complaint didn't allege that any official at Jefferson County refused him medical care. So the court finds that Files' claims against ACH do not arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Plus, Files' failure to refer to his alleged lack of medical care means there's no way ACH should have known that Files' original complaint would have been brought against it but for a mistake about the proper party's identity. *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). So the court will dismiss Files' remaining claims against ACH as time-barred.

—

In sum, Files' claims against Franklin and ACH are time-barred. But Files' claims against Thompson, McCreless, Scott, Hill, and Merchant are not, so the court must address their merit.

### C.     Title II

Count I alleges violations of Files' rights under Title II of the ADA. To state a claim under Title II, Files must show three things: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied benefits because of a public entity's services, programs, activities, or otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of Files' disability." *Karantasalis v. City of Miami Springs*, 17 F.4th 1316, 1322 (11th Cir. 2021).

1. ACH: Even if Files' claims against ACH weren't time-barred, he still would have failed to state a claim against ACH. "Only public entities are liable for violations of Title II of the ADA." *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010). As relevant here, Title II defines "public entity" to mean (a) any State or local government or (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government 42 U.S.C. § 12131(1). The term "instrumentality of a State" refers to governmental units or units created by them; it doesn't refer to private corporations that contract with a public entity to provide a service. *See Edison*, 604 F.3d at 1310. So the Eleventh Circuit has held that a private prison

management corporation that operated a Florida state prison wasn't an instrumentality of the State under Title II. *See id.* In doing so, the circuit court cited with approval a district court opinion that "held that a private medical provider for a prison could not be considered a 'public entity' under the statute because it was not a governmental entity." *Id.*

Files alleges that Jefferson County contracted with ACH to provide necessary medical care to inmates housed at the Jefferson County Jail. (Doc. 47 ¶ 9). Because ACH is a private company that merely contracted with the County to provide medical services, the court finds that Files cannot bring a Title II claim against ACH.

2. Jefferson County Defendants: Thompson, McCreless, Scott, Hill, and Merchant assert that they are entitled to qualified immunity on Files' Title II claims.[2] Qualified immunity protects government officials from being sued in their individual capacities so long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations omitted).

Everyone agrees that the Jefferson County Defendants were acting within the scope of their discretionary authority. But the Jefferson County Defendants argue that Files has failed to plead a viable Title II claim against them because he hasn't shown that they acted with deliberate indifference.[3] As

---

[2] The defense of qualified immunity doesn't apply to Files' claims against the Jefferson County Defendants in their official capacities. *See Bruce v. Beary*, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007). But for the same reasons why the Jefferson County Defendants haven't shown that the court should dismiss their individual capacity Title II claims, they haven't shown that the court should dismiss the official capacity Title II claims.

[3] The Jefferson County Defendants don't address whether they qualify as public entities in their individual capacities. *See Owens v. Sec'y, Fla. Dep't of Corrs.*, 602 F. App'x 475, 478

the Jefferson County Defendants note, to receive compensatory damages (the only damages available to Files), Files "must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). "Deliberate indifference . . . is an 'exacting standard'" that "requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" *Id.* (citations omitted). To meet this standard, Files "must demonstrate that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf had actual knowledge of discrimination in the entity's programs and failed adequately to respond." *Id.* (cleaned up). And the "official must be high enough up the chain-of-command that his or her acts constitute an official decision by the entity not to remedy the misconduct." *Id.* (cleaned up).

The Jefferson County Defendants' briefing on deliberate indifference mainly addresses Files' claims that no one responded to his requests for medical care. But Files' claims against these Defendants under Title II are that they didn't provide Files a cell assignment that accommodated his disability as an above-knee amputee. (Doc. 47 ¶¶ 32–50). For example, Files alleges that he was held in an overcrowded cell that didn't fit his wheelchair. (*Id.* ¶¶ 18–22). Files also says that he couldn't use his cell's toilet like his cellmates because the toilet lacked handrails or other safeguards. (*Id.* ¶¶ 23–24). These allegations show that Files was denied a benefit "by reason of [his] disability." *Silberman*, 927 F.3d at 1134.

Files has also adequately alleged deliberate indifference. Files asserts that he filed several grievances with Thompson, McCreless, Scott, Hill, and Merchant highlighting his lack of ADA accommodations, challenging his cell assignment, and asking for a different sleeping arrangement. (Doc. 47 ¶¶ 25–27). But despite knowing about Files' lack of accommodations and issues with his cell assignment, Thompson, McCreless, Scott, Hill, and Merchant did nothing in response to Files' grievances or requests for accommodations. (*Id.* ¶¶ 25–27, 29). Files' allegations that the Jefferson County Defendants did

---

(11th Cir. 2015) ("Since only public entities may be liable under the ADA, Owens fails to state ADA claims against [FDOC staff members] in their individual capacities."). So the court doesn't address this issue either. But the court's ruling doesn't prevent the Jefferson County Defendants from making this argument at the summary judgment stage.

12

nothing after being put on notice that his cell didn't accommodate his disability shows that these Defendants "knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Silberman*, 927 F.3d at 1134.

Files has also adequately alleged that Thompson, McCreless, Scott, Hill, and Merchant were "high enough up the chain-of-command" that their "acts constitute an official decision by the entity not to remedy the misconduct." *Id*. Files says that Thompson was the Chief Jail Administrator who "was responsible for responding to inquiries, grievances, complaints, and other concerns regarding jail operations." (Doc. 47 ¶ 3). And he alleges that McCreless and Scott were day shift supervisors "responsible for receiving and responding to inmate grievances during the day shift." (*Id*. ¶¶ 5–6). Finally, Files alleges that Hill and Merchant were night shift supervisors "responsible for receiving and responding to inmate grievances during night shift." (*Id*. ¶¶ 7–8). It's reasonable to infer from Files' allegations that each of these Defendants had the authority to address the issues with Files' cell assignment and "to institute corrective measures on the public entity's behalf." *Silberman*, 927 F.3d at 1134. It's also reasonable to infer that the Chief Jail Administrator and day/night shift supervisors have "substantial supervisory authority within [the Jefferson County Jail's] chain of command" to count as officials. *See id*. at 1136. As a result, the court finds that Files has alleged a clearly established violation of his rights under Title II for which he can recover monetary damages. The court will thus deny Thompson, McCreless, Scott, Hill, and Merchant's motion to dismiss the Title II claims against them.

### D. Deliberate Indifference to Serious Medical Needs

Count II alleges that Defendants violated Files' rights by being deliberately indifferent to his serious medical needs under 42 U.S.C. § 1983. To establish a deliberate indifference to serious medical needs claim, a plaintiff "must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

13

1. <u>ACH</u>: Files seeks to hold ACH liable for not providing him medical care for his fractured ribs and punctured lung. (Doc. 47 ¶56). Files says that he requested but did not receive medical attention for these pre-confinement injuries, which were exacerbated by laying on the cold, hard floor of his cell. (*Id.* ¶ 28). "When a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). So "the requirement of a municipal policy or custom" is "an essential element of a § 1983 claim" against private contractors, like ACH. *See id.* at 453. A plaintiff may show a governmental policy or custom in three ways: (1) an express policy; (2) a widespread practice so permanent and well-settled that it counts as a custom; or (3) the act or decision of an official with final policy-making authority. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966–68 (11th Cir. 2002).

Files doesn't allege that ACH had an express policy or custom that led to his lack of medical treatment. Nor does he explain how ACH responded to medical requests related to other inmates; he focuses only on the lack of a response to his own requests for medical treatment. And Files doesn't identify which ACH employee knew of his need for medical care but failed to act. So he hasn't shown that the decision to not treat him was the decision of an official with final policy-making authority. As a result, even if Files' deliberate indifference to serious medical needs claim against ACH wasn't time-barred, it would fail to state a claim for municipal liability.

2. <u>Jefferson County Defendants</u>: Files alleges that Thompson, McCreless, Scott, Hill, and Merchant were deliberately indifferent to his serious medical needs by not providing him handicapped-accessible structures, such as handrails, doorways large enough to accommodate his wheelchair, handicapped-accessible toilets in his cell, or a bed. (Doc. 47 ¶¶ 53–54). According to Files, the failure to provide him with these accommodations exacerbated the pre-detention injuries to his lung and ribs.

Thompson, McCreless, Scott, Hill, and Merchant once again assert the defense of qualified immunity. So Files must prove that their actions violated clearly established law. *See Harbert Int'l*, 157 F.3d at 1282. Deliberate indifference requires a showing of subjective knowledge of a risk of serious

harm. *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017). To be subjectively aware of a risk of harm, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). And though Files has alleged enough facts to reasonably infer that Thompson, McCreless, Scott, Hill, and Merchant knew Files was being denied benefits afforded non-disabled inmates, Files hasn't adequately alleged that these Defendants knew that the lack of accommodations created a substantial risk of serious harm.

To be sure, the Eleventh Circuit has held that the denial of medical devices, such as prosthetics, eyeglasses, hearing aids, and dentures could support a claim for deliberate indifference to a serious medical need. *See Gilmore v. Hodges*, 738 F.3d 266, 274–75 (11th Cir. 2013). And Files does state that Thompson, McCreless, Scott, Hill, and Merchant knew of Files' lack of access to handicapped-accessible structures. (Doc. 47 ¶ 54). But Files doesn't allege, even in conclusory fashion, that these Defendants ever inferred that the failure to provide Files with his requested accommodations could pose a substantial risk of serious harm to Files' health and safety. Plus, Files doesn't elaborate on his grievances to the Jefferson County Defendants, specify whether any of these Defendants received his requests for medical treatment for his pre-detention injuries, or explain if the Jefferson County Defendants were told that Files' lack of accommodations exacerbated his injuries. In fact, it's unclear from Files' complaint if Thompson, McCreless, Scott, Hill, or Merchant knew about Files' fractured ribs and punctured lung. So the court finds that Files hasn't adequately alleged that Thompson, McCreless, Scott, Hill, or Merchant were subjectively aware of a substantial risk of harm to Files. *See Farmer*, 511 U.S. at 838 (finding no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not"). So the court will dismiss Files' deliberate indifference to serious medical needs claims against the Jefferson County Defendants.

### E. Failure to Intervene

Count III brings a failure to intervene claim against Thompson, McCreless, Scott, Hill, and Merchant. If a government official, "whether supervisory or not, fails or refuses to intervene when a constitutional violation

. . . takes places in his presence, the [official] is directly liable under Section 1983." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019).

Files alleges that Thompson had a reasonable opportunity to prevent the violation of Files' rights by ensuring a proper and efficient method to respond to disabled inmate grievances. (Doc. 47 ¶ 62). And Files says that McCreless, Scott, Hill, and Merchant had a reasonable opportunity to prevent the violation of Files' constitutional rights by ensuring that Files was moved to a more suitable cell that could accommodate his disability. (*Id.* ¶¶ 63–64).

Files' failure to intervene claim fails for two reasons. First, the only constitutional violation that Files alleges is the deliberate indifference to serious medical needs claim, which the court has dismissed against each Defendant. *See Sebastian*, 918 F.3d at 1312 ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed."). Second, Files doesn't plead facts that suggest that Thompson, McCreless, Scott, Hill, and Merchant had an opportunity to prevent the other Defendants from violating Files' rights. *See Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) ("Alston did not allege what further steps Trammel should have taken or that he had the opportunity to take further steps while also restraining L.D.B. Thus, the record does not support that Trammel was able to intervene but failed to do so."). Instead, Files' complaint includes only "[t]hreadbare recitals of the elements" of a failure to intervene claim "supported by . . . conclusory statements." *Ashcroft*, 556 U.S. at 678. So the court will dismiss Files' failure to intervene claim against Thompson, McCreless, Scott, Hill, and Merchant.

### F. Intentional Infliction of Emotional Distress

Files concedes his intentional infliction of emotional distress ("IIED") claim against each Defendant except for Franklin.[4] As explained above, Files' claims against Franklin are time-barred, so there is no need for the court to address the merits of this claim. The court will dismiss Files' IIED claim against each Defendant.

---

[4] The Jefferson County Defendants say that Files has conceded the IIED claim against each Defendant except for Merchant. But Files' response brief, read in context, makes clear that he seeks to maintain the IIED claim against only Defendant Franklin. (Doc. 66 at 26–28).

## CONCLUSION

For these reasons, the court **WILL GRANT** Pettway and ACH's motions to dismiss (docs. 48, 57). The court will **GRANT IN PART** and **DENY IN PART** the Jefferson County Defendants' motion to dismiss (doc. 59). Files claims against Thompson, McCreless, Scott, Hill, and Merchant for violating Title II of the ADA will proceed to discovery. The remaining parties must file a Rule 26(f) report on or before **January 19, 2024,** that has this case trial ready by **March 17, 2025**.

The court will enter a separate order that carries out these findings.

**Done** on January 3, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE